DECISION
{¶ 1} Relator, Dolgencorp, Inc. ("relator"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting the request for temporary total disability ("TTD") compensation of respondent, Robert M. Chaney ("respondent"), and ordering the commission to find that respondent is barred from receiving TTD compensation because he voluntarily abandoned his employment.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and that this court should deny the requested writ. Relator filed objections to the magistrate's decision, the commission filed a memorandum in opposition to those objections, and relator filed a reply memorandum. This cause is now before the court for a full and independent review.
 {¶ 3} The magistrate concluded that the commission's order was not an abuse of discretion because the work rules upon which respondent's termination was purportedly based did not identify the offenses as dischargeable. In its objections, relator argues that the magistrate impermissibly conducted a weighing of the evidence by focusing on the statements contained in the Personnel Action Form, instead of focusing on the legal issue of whether the progressive counseling referenced in the Employee Handbook precluded a finding of voluntary abandonment underState ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, 650 N.E.2d 469. *Page 3 
 {¶ 4} Relator argues that if the magistrate had focused on the three requirements for a finding of voluntary abandonment underLouisiana-Pacific, then this would have compelled a finding that the commission abused its discretion. In support of this contention, relator argues that because the Employee Handbook stated that even a first offense "may lead to progressive counseling and/or termination," respondent knew or should have known that his offenses were immediately dischargeable and that he may not be afforded progressive counseling.
 {¶ 5} First, we do not believe that the magistrate impermissibly engaged in a weighing of the evidence. Our review must be premised upon whether the commission's order is supported by "some evidence." As the commission points out in its memorandum in opposition to relator's objections, the Personnel Action Form was the only evidence in the record that documents the reason for relator's decision to terminate respondent. That form states that the termination is due to "[allowing unauthorized persons in the store." In its brief and in its objections, relator refers to surveillance evidence, but this evidence was not submitted at the last evidentiary commission hearing and is thus not part of the record before this court. The record does reveal, however, that respondent testified that he was not aware that having his son in the store was a dischargeable offense.
 {¶ 6} As the magistrate pointed out, the Employee Handbook does not state that "[allowing unauthorized persons in the store" will result in immediate discharge; rather, it provides that progressive counseling "and/or" termination will be considered. This, coupled with respondent's testimony, is some evidence supporting the commission's order. *Page 4 
 {¶ 7} Having undertaken a review of relator's objections, considered the arguments of the parties, and independently appraised the record, we overrule relator's objections, adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 TYACK and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered on June 29, 2007 IN MANDAMUS {¶ 8} Relator, Dolgencorp, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 6 
("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent Robert M. Chaney ("claimant") and ordering the commission to find that claimant is barred from receiving TTD compensation because he was terminated for violating a written work rule.
Findings of Fact: {¶ 9} 1. Claimant sustained a work-related injury on January 4, 2006 when he was carrying boxes and developed a sharp pain in his low back. Claimant testified that he notified risk management and his district manager of his injury on the day it occurred.
 {¶ 10} 2. Claimant first sought medical treatment on January 9, 2006. An MRI was also performed in January 2006.
 {¶ 11} 3. On January 27, 2006, claimant filed an FROI-I form with the Ohio Bureau of Workers' Compensation. Relator contested the claim and the matter was referred to the commission for adjudication.
 {¶ 12} 4. A hearing was held before a district hearing officer ("DHO") on April 10, 2006. The DHO allowed claimant's claim for the following conditions: "lumbar strain, and a herniated disc at L3-4." The commission also determined that TTD compensation should be paid to claimant beginning January 27, 2006 to present and continuing upon submission of medical proof.
 {¶ 13} 5. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on May 15, 2006. The SHO took the matter under advisement and, thereafter, in an order mailed May 24, 2006, affirmed the prior DHO order. It is evident from the SHO's order that relator had argued that TTD compensation should not be paid *Page 7 
to claimant because he had voluntarily abandoned his employment when he violated a written work rule. On that issue, the SHO made the following finding:
 The Staff Hearing Officer finds that temporary total disability compensation benefits are found to be appropriate in this claim as the violation of the employer's written work rules does not stipulate that termination is the result of said violations. Only that termination as well as consulting will be considered.
 This order is based upon the medical of Upper Valley Medical Center dated 01/09/2006 and 01/27/2006, Dr. Kahkonen dated 01/27/2006, C-84 from Dr. Paley from 02/01/2006, and 02/2006 Dollar General Employee Handbook, specifically paid for under reasons for counseling and/or termination No. 11.
 {¶ 14} 6. Thereafter, relator appealed the SHO's order to the commission again alleging that claimant was not entitled to TTD compensation due to his violation of a written work rule. In that regard, relator made the following argument to the commission:
 Mr. Chaney admitted at the district hearing that having his son in the store was a violation of a written company policy (see DHO transcript, page 16). Although the written work rule had not been provided to the District Hearing Officer, copies of the written work rule were provided to the Staff Hearing Officer. Under the Dollar General Employee Handbook, a reason for progressive counseling and / or termination is specifically noted as:
 Reasons for counseling and / or termination The disciplinary action that will be taken is a particular case will depend on the circumstances involved, including the severity of the offense, the employee's past record and other relevant factors. The following are some examples of violations (not all inclusive) for which even the first offense may lead to progressive counseling and/or termination from the company: *Page 8 
 * * * [Nine] Allowing a minor to perform work for the company (except in those states approved by the company as part of the hiring minors program).
 * * * [Eleven] Allowing friends, family or any other individuals who are not employees to work.
 * * * [Fifty-three] Failure to open the store on time or closing the store early.
 {¶ 15} 7. Relator also filed a "Dollar General Personnel Action Form" dated February 15, 2006. According to that form, relator terminated claimant, effective January 23, 2006, for the following specifically noted reason: "48 Violation of company policy/procedure (comments required below)[.] Allowing unauthorized persons in the store." The record indicates that relator has surveillance cameras present in the store. On January 23, 2006, relator reviewed the surveillance tapes and saw that claimant had his son in the store on January 2, 2006.
 {¶ 16} 8. In an order mailed June 13, 2006, the commission refused relator's appeal.
 {¶ 17} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 18} In this mandamus action, relator asserts that it met the requirements of State ex rel. Louisiana-Pacific Corp. v. Indus.Comm. (1995), 72 Ohio St.3d 401, and proved that claimant had violated a written work rule, which he knew or should have known could result in his termination and that his termination barred the receipt of any *Page 9 
TTD compensation. For the reasons that follow, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in rejecting relator's argument in awarding claimant TTD compensation.
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 20} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. *Page 10 
 {¶ 21} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation.State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44. In State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, 121, the court stated as follows:
 * * * [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *
 {¶ 22} In Louisiana-Pacific, the court characterized a firing as "voluntary" where that firing is generated by the employee's violation of a written work rule or policy which: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 23} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, the court recognized the potential for abuse in permitting a simple allegation of misconduct to preclude the payment of TTD compensation. InMcKnabb, the issue concerned Louisiana-Pacific's reference to a written work rule or policy. The court stated that written work rules do more than just define prohibited conduct — they set forth a standard of enforcement as well.
 {¶ 24} As noted in the findings of fact, relator had argued that claimant voluntarily abandoned his employment on January 2, 2006, two days before the date of injury, when he violated the following policy: *Page 11 
 Reasons for counseling and / or termination The disciplinary action that will be taken is a particular case will depend on the circumstances involved, including the severity of the offense, the employee's past record and other relevant factors. The following are some examples of violations (not all inclusive) for which even the first offense may lead to progressive counseling and/or termination from the company:
 * * * [Nine] Allowing a minor to perform work for the company (except in those states approved by the company as part of the hiring minors program).
 * * * [Eleven] Allowing friends, family or any other individuals who are not employees to work.
 * * * [Fifty-three] Failure to open the store on time or closing the store early.
However, as also noted in the findings of fact, relator submitted a personnel action form dated February 15, 2006, informing claimant that he was being discharged from his employment for "[allowing unauthorized persons in the store."
 {¶ 25} In finding that relator did not meet its burden of proof, the SHO noted that relator's written work rules do not stipulate that termination will result from the violations relator claimed that claimant had committed. Further, the SHO noted that the written work rules provide for progressive counseling as well as termination. Specifically, the magistrate notes that relator's employee handbook provides, in pertinent part:
 Progressive Counseling
 Progressive counseling is used to document unacceptable performance, conduct or attendance issues and to positively *Page 12 
reinforce performance improvement. The performance, conduct and attendance standards contribute to the ability to perform effectively and create a positive, equitable and values-driven environment. The appropriate level of progressive counseling is determined by, among other things, the severity of the attendance, conduct or performance issue and the employee's previous attendance, conduct or performance.
 The purpose of the progressive counseling is to communicate unacceptable performance, conduct or attendance issues and develop an action plan which results in standard or above standard performance, conduct or attendance. However, these procedures are guidelines only and the Company specifically reserves the right to terminate any employee at any time and without issuing progressive counseling when the Company determines it to be appropriate under the circumstances.
 Reasons for Counseling and/or Termination
 The disciplinary action that will be taken in a particular case will depend on the circumstances involved, including the severity of the offense, the employee's past record and other relevant factors. * * *
 {¶ 26} Thereafter, the handbook provides 66 violations which may lead to counseling and/or termination some of which the magistrate specifically notes are serious, such as, excessive absences or tardiness, unapproved absence from work, personal use of the company credit card, violating the anti-discrimination and harassment policy, conviction of a felony, willful destruction of company property, falsifying company documents, etc. The handbook also lists violations which are obviously less severe such as parking in unauthorized areas, eating or drinking in unauthorized areas, and unauthorized personal use of cellular phones and/or pagers during work hours. However, according to the documents relator provided, "[allowing unauthorized persons in the store" (the stated reason relator gave claimant for his *Page 13 
termination) is considered to be a violation only when it occurred "before or after store hours." (See violations #52.)
 {¶ 27} As the Supreme Court of Ohio has noted, especially when the termination and the injury occur in close proximity from a time perspective, the issue must be carefully scrutinized to ensure that the employee's termination is truly due to the violation of a written work rule and is not in any way influenced by the fact that the employee has a work-related injury.
 {¶ 28} In the present case, the evidence submitted by relator concerning the reasons why claimant was terminated were inconsistent. Relator argued that claimant had allowed a minor, who was also a family member, to perform work on company time and had failed to open the store on time or had closed the store early. However, relator's documentation indicated that claimant was terminated because he permitted unauthorized persons in the store. As noted above, this violation would have further required that it occur "before or after store hours." Further, according to the policy expressed in relator's handbook, "[t]he appropriate level of progressive counseling is determined by, among other things, the severity of the attendance, conduct or performance issue and the employee's previous attendance, conduct or performance." Although the handbook does specifically state that the employer "reserves the right to terminate any employee at any time and without issuing progressive counseling when the [employer] determines it to be appropriate under the circumstances," the handbook also provides that the "purpose of the progressive counseling is to communicate unacceptable performance, [or] conduct * * * issues and develop an action plan which results in standard or above standard performance [or] conduct." As such, this *Page 14 
magistrate cannot say that the commission abused its discretion when it found that relator had failed to meet its burden of proof underLouisiana-Pacific. Having his son in the store was not clearly defined as prohibited conduct which had been identified as a dischargeable offense. Further, given the inconsistency of relator's explanation for firing claimant, the language of the handbook and claimant's testimony that he was not aware that his conduct would result in his termination, the magistrate finds that relator has not demonstrated that the commission abused its discretion in finding that relator did not meet its burden of proof under Louisiana-Pacific.
 {¶ 29} Based on the foregoing, it is this magistrate's conclusion that relator's request for a writ of mandamus should be denied.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1